IN THE SECOND DISTRICT COURT OF APPEAL, LAKELAND, FLORIDA

May 3, 2017

EDELMIRO DUARTE,                    )
                                    )
          Appellant,                )
                                    )
v.                                  )          Case No. 2D15-1952
                                    )
SNAP-ON INCORPORATED, a foreign     )
corporation, and NORMAN MULLINS,    )
                                    )
          Appellees.                )
_____ )

BY ORDER OF THE COURT:

Upon consideration of the motion for clarification and rehearing of March 15, 2017, decision filed by Appellee Snap-on Incorporated on March 30, 2017 and motion for rehearing and/or clarification of March 15, 2017, decision filed by Appellee Norman Mullins on March 30, 2017,

IT IS ORDERED that the motions for clarification are granted in part and denied in part. The opinion issued on March 15, 2017, is withdrawn and the following opinion is substituted therefor. The motions for rehearing are denied. No further motions will be considered.

I HEREBY CERTIFY THE FOREGOING IS A
TRUE COPY OF THE ORIGINAL COURT ORDER.

_____
MARY ELIZABETH KUENZEL, CLERK

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT


EDELMIRO DUARTE,                          )
                                          )
            Appellant,                    )
                                          )
v.                                        )          Case No. 2D15-1952
                                          )
SNAP-ON INCORPORATED, a                   )
foreign corporation, and NORMAN           )
MULLINS,                                  )
                                          )
            Appellees.                    )
_____)

Opinion filed May 3, 2017.

Appeal from the Circuit Court for Lee
County; Elizabeth V. Krier, Judge.

Stacy L. Sherman of Stacy L. Sherman,
P.A., Cape Coral, for Appellant.

Scott A. Cole and Daniel M. Schwarz of
Cole, Scott & Kissane, P.A., Miami, for
Appellee Snap-on Incorporated.

Caryn L. Bellus and Bretton C. Albrecht
of Kubicki Draper, P.A., Miami for Appellee
Norman Mullins.



SALARIO, Judge.

Edelmiro Duarte alleges that he was injured when a truck owned by Snap-on Incorporated and driven by Norman Mullins slammed into the back of his car while he was stopped in traffic. He challenges the trial court's final order, rendered without an evidentiary hearing, dismissing his personal injury suit against Snap-on and Mr. Mullins as a sanction for a fraud upon the court. Because the limited record before the trial court was insufficient to establish that this case is among the hopefully rare ones involving an unconscionable scheme to interfere with a trial court's ability to impartially resolve a dispute or a defendant's ability to prepare a defense, we are constrained to reverse.

## I.

On January 18, 2008, Mr. Duarte was sitting in traffic on I-75 in a car he was driving and in which his girlfriend, her daughter, his son, and his grandson were passengers. At the same time, Mr. Mullins was on I-75 driving a truck owned by Snap-on. He smashed into Mr. Duarte's stopped car without hitting his brakes. The police report says he was driving sixty miles an hour. After being put through field sobriety tests, he was arrested for driving under the influence causing serious bodily injury.

At least some of the injuries caused by the accident were severe. Mr. Duarte's girlfriend was rendered a paraplegic. He testified that she filed suit to recover for her injuries and settled her claims for many millions of dollars. Mr. Duarte's son and grandson likewise sued to recover for their injuries and obtained much smaller, but still sizeable, settlements on their claims.

Mr. Duarte filed this suit against Mr. Mullins and Snap-on to recover for his own injuries on January 12, 2012. He claims to have suffered past, present, and future

loss of earnings, medical expenses, and pain and suffering, much of which is claimed to be related to injuries to both his back and his arm. There is no dispute as to liability. The dispute is over causation and the extent of Mr. Duarte's injuries.

That controversy takes on significance in this case because, after he filed suit, Mr. Duarte was in another car wreck. On March 8, 2012, Mr. Duarte was rear-ended at a stop sign. The parties dispute how severe this event was and whether and to what extent it, rather than the January 2008 accident involving Mr. Mullins, caused the injuries for which Mr. Duarte seeks to recover in this case.

The issues in this appeal concern the candor and completeness of Mr. Duarte's discovery responses about the March 2012 accident. Shortly before that accident, Snap-on served Mr. Duarte with interrogatories asking for the names of the medical providers that treated him at any relevant time and the dates of those treatments. Mr. Duarte answered in April 2012 and identified eight providers and dates of treatment between January 2008 and April 2012. He amended his answers in April 2013 to disclose visits to several additional providers, including the Cleveland Radiology Center in March 2012 and First Chiropractic Center between March and June 2012.

Mr. Mullins served Mr. Duarte with his own interrogatories in November 2013, which asked the same questions as had Snap-on about medical providers and also asked whether Mr. Duarte had been in any accidents since the January 2008 accident. Although Mr. Duarte's answer about the medical providers included several providers from whom he sought treatment for back pain after the March 2012 accident, it did not identify Cleveland Radiology and First Chiropractic Center. Mr. Duarte's answer to the question about other accidents was "not that I remember."

Mr. Duarte was deposed over two days in April 2013 and May 2014. During the May 2014 session, he was asked whether he had been involved in any type of accident after the January 2008 accident. He testified that he had not, "unless it was that one time that I was parked and someone hit me from behind and broke one of my lights, but I don't know if that's considered an accident." This was a reference to the March 2012 accident. Mr. Duarte explained that he was at a stop sign and a pick-up truck "touched us and they took off quickly." He declined to characterize the event as an accident, saying that the damage to his car "was just a few dollars" but also stating that as a result "[m]y back hurt even more, much more." The record does not show whether this was the first time Snap-on and Mr. Mullins had heard of the March 2012 accident; we note, however, that they have not asserted that it was.

In October 2014—one month before the then-scheduled trial date—Snap-on filed a motion to dismiss the case with prejudice based on fraud upon the court. Mr. Mullins joined in the motion, which essentially argued that Mr. Duarte (1) testified falsely about the severity of the March 2012 accident during his deposition and (2) failed to disclose the March 2012 accident and the subsequent visits to Cleveland Radiology Center and First Chiropractic Center—related to back injury issues—in written answers to interrogatories.

The motion included attached interrogatory answers and deposition transcripts upon which the claim of fraud was based. It also included the transcript of an examination under oath that Mr. Duarte gave in May 2012 in connection with a claim he made on his automobile insurance for the March 2012 accident. During that examination, Mr. Duarte described the March 2012 accident in starker terms than during

his deposition in this case, characterizing it as an "accident" and describing it as a "hard impact very fast." He also said that "the car felt the impact," that "[t]he trunk was all bent and the bumper was indented," and that the accident severely aggravated his back injury from the January 2008 accident.

The trial court heard the motion without taking evidence. Mr. Duarte proffered, among other things, that he did not intend to mislead anyone, that he neither reads nor speaks English—as evidenced by his use of an interpreter for deposition—and that he suffers from memory deficiencies due to age and medications he takes. Relying solely on the attachments to the motion, the trial court concluded that Mr. Duarte told "repeated untruths" about the March 2012 accident and that his credibility was so damaged that his testimony could not be presented to a jury. It entered an order dismissing the case with prejudice from which Mr. Duarte took this timely appeal.

II.

A trial court has the inherent authority to dismiss a suit when the plaintiff commits a fraud on the court. Howard v. Risch, 959 So. 2d 308, 310 (Fla. 2d DCA 2007), distinguished on other grounds by Ramey v. Haverty Furniture Cos., 993 So. 2d 1014 (Fla. 2d DCA 2008). Although our review in such cases is for abuse of discretion, the trial court's discretion is narrower and our review is more stringent than it would be in other cases evaluated under an abuse of discretion standard because dismissal is regarded as an extreme remedy that should be reserved for extreme cases. Id. ("Because dismissal is the most severe of all possible sanctions, however, it should be employed only in extreme circumstances."); see also Jacob v. Henderson, 840 So. 2d 1167, 1169 (Fla. 2d DCA 2003), distinguished on other grounds by Ramey, 993 So. 2d

- 5 -

1014. Moreover, where the trial court makes a decision without hearing evidence, as it did here, we give that decision less deference than we would in a case where the trial court heard evidence because we can evaluate a cold trial court record as well as the trial court can. Jacob, 840 So. 2d at 1170; see also Ruiz v. City of Orlando, 859 So. 2d 574, 576 (Fla. 5th DCA 2003) (reversing dismissal for fraud on the court).

To obtain a dismissal for fraud on the court, the movant must prove his case by clear and convincing evidence. See Myrick v. Direct Gen. Ins. Co., 932 So. 2d 392, 392 (Fla. 2d DCA 2006). Substantively, he must show that his opponent "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier of fact or unfairly hampering the presentation of the opposing party's claim or defense." Jacob, 840 So. 2d at 1169 (quoting Cox v. Burke, 706 So. 2d 43, 46 (Fla. 5th DCA 1998)). This standard requires that a trial court "balance two important public policies of this state: our much preferred policy of adjudicating disputed civil cases on the merits and the policy of maintaining the integrity of this state's judicial system." Pena v. Citizens Prop. Ins. Co., 88 So. 3d 965, 967 (Fla. 2d DCA 2012) (citing Gilbert v. Eckerd Corp. of Fla., 34 So. 3d 773, 776 (Fla. 4th DCA 2010)). "Generally, unless it appears that the process of trial has itself been subverted, factual inconsistencies or even false statements are well managed through the use of impeachment at trial or other traditional discovery sanctions, not through dismissal of a possibly meritorious claim." Howard, 959 So. 2d at 311.

Snap-on's pitch to the trial court was that Mr. Duarte played the 2008 and 2012 accidents off each other to maximize his recovery in each—making the March

2012 accident sound serious for purposes of beefing up his insurance claim for that accident and minimizing it here because it would weaken his claim for damages based on the January 2008 accident.[1]  The paper record appended to Snap-on's motion to dismiss is certainly susceptible of that characterization.  But that record alone was not, under our court's precedents, a sufficient basis to dismiss Mr. Duarte's claims with prejudice instead of allowing him to be impeached at trial or imposing some lesser sanction, if warranted.

Our decision in <u>Jacob</u> speaks to the variances in Mr. Duarte's testimony in his 2012 examination under oath and his deposition testimony in this case.  Like this case, <u>Jacob</u> involved a dispute over the extent of a plaintiff's injuries in an automobile accident.  The plaintiff testified at deposition that as a result of an injury to her arm, she was unable to close a car door with her right hand or to sweep her own driveway.  The defendants later produced a surveillance video showing her doing what she said she could not.  Based solely on the transcript and the video and without taking evidence, the trial court dismissed the action for fraud on the court.  Holding that the trial court abused its discretion, we reversed.  840 So. 2d at 1168.  We reasoned as follows:

> Viewing the facts before this court, Mrs. Jacob either knowingly perpetrated a fraud, exaggerated her injuries, or unknowingly provided video evidence that her injuries are far less severe than she may believe.  <u>Only the first of these three possibilities would support the dismissal of all claims with prejudice</u>. . . .
>
> . . . <u>This is not a case in which Mrs. Jacob suffered no injury</u>.  The question is the severity of her injuries.  Certainly,

---

[1]Snap-on also suggests that Mr. Duarte aided his alleged fraud upon the court by failing to disclose a 1996 accident and failing to disclose the March 2012 accident during independent medical examinations.  Based on this record, we conclude that these assertions lack merit.

the video evidence that she is capable of performing tasks which she has denied the ability to perform lessens her credibility . . . , but the jury should evaluate this evidence. The power to resolve disputes over the truth or falsity of claims belongs to a jury.

. . . [T]he trial court's ruling in this case resulted from a review of the same deposition and videotape that we reviewed. Trial court rulings are given less deference when they are based on the same cold document record that is before the reviewing court.

Id. at 1169-70 (emphasis added).

Like Jacob, this is not a case in which Mr. Duarte has no injuries. And there is evidence that the January 2008 accident, which was very severe and as to which Snap-on and Mr. Mullins have admitted liability, was in fact the cause of some injury. The dispute here is over the extent of those injuries and the extent to which the March 2012 accident caused or contributed to them. On that score, Mr. Duarte did not falsely deny that in March 2012 a pick-up truck hit his car while he was stopped. On the contrary, he identified the event as having happened but described it as being slight and not, in his opinion, rising to the level of an accident. Even then, he testified that the event made his back hurt "much more" than it did before—a fact that undercuts a theory that his back injuries were entirely attributable to the January 2008 accident. Mr. Duarte's testimony with regard to his insurance claim on the March 2012 accident, like the video recording in Jacob, diminishes the credibility of his deposition testimony about the severity of the March 2012 accident. Without additional facts, however, the trial court record does not establish that Mr. Duarte sentiently set in motion an unconscionable scheme to defraud in this case against Snap-on and Mr. Mullins such that it would warrant a dismissal. And without additional evidence demonstrating a

knowing fraud on the court in this case, the inconsistencies between his May 2012 examination under oath and his May 2014 deposition are regarded by our decisions as matters of fact and credibility for a jury to resolve. See Jacob, 840 So. 2d at 1170; see also Kubel v. San Marco Floor & Wall, Inc., 967 So. 2d 1063, 1064 (Fla. 2d DCA 2007) (holding that evidence that the plaintiff's husband asked the physician to revise a report to eliminate certain facts bearing on the plaintiff's injuries did not justify dismissal because those matters were suited for impeachment at trial).

Our decision in Howard, in turn, bears directly on the completeness of Mr. Duarte's interrogatory answers. That case, like this one, involved a dispute over the extent of a plaintiff's back injuries after an automobile accident. The defendant sought a dismissal for fraud on the court because the plaintiff failed to disclose, in response to a question at deposition, several medical matters relevant to his claim of injury. The plaintiff did reveal some matters bearing on his injuries but not all of them. The plaintiff denied an intent to provide false information. After the trial court dismissed the action without taking evidence, we reversed because the limited record before the trial court was insufficient to warrant dismissal. 959 So. 2d at 314. In particular, the trial court lacked evidence to find that the plaintiff affirmatively or intentionally misrepresented his medical conditions, and there was no evidence that the treatments the defendant later uncovered would have made any difference to the case. Id.

As in Howard, the record upon which the trial court based its decision in this case was insufficient to deem Mr. Duarte's interrogatory disclosure a fraud on the court. Insofar as Mr. Duarte's receipt of medical treatment subsequent to the March 2012 accident from Cleveland Radiology and First Chiropractic was concerned, those

matters were disclosed in Mr. Duarte's amended answers to Snap-on's interrogatories. Snap-on failed to mention that fact in its dismissal motion, and the trial court failed to recognize it. Because these facts were disclosed by Mr. Duarte, the fact that they were not contained in either his initial answers to Snap-on's interrogatories or his answers to Mr. Mullins' interrogatories cannot be said to have operated as a fraud. Similarly, although Mr. Duarte's December 2013 answers to Mr. Mullins' interrogatories stated "I don't remember" in response to a question about other accidents, Mr. Mullins was informed during Mr. Duarte's deposition about the March 2012 collision and the fact that Mr. Duarte did not regard it as an accident. The essential facts were disclosed—there was a collision, and Mr. Duarte received treatment thereafter—but there is a dispute about the characterization of those facts. On this record, the evidence is insufficient to justify dismissal for fraud upon the court. See Howard, 959 So. 2d at 314; see also Laschke v. R.J. Reynolds Tobacco Co., 872 So. 2d 344, 346 (Fla. 2d DCA 2004) (reversing dismissal order where the evidence was insufficient to show that plaintiff's attempt to have medical records altered "was one that, if she had been successful, would have interfered with the trier of fact's ability to impartially adjudicate the issues . . . nor would it have unfairly 'hampered' the appellees' presentation of their defense").

We note that unlike our decision today, our court affirmed dismissals for fraud on the court based on false or misleadingly incomplete discovery responses in both Ramey, 993 So. 2d 1014, and Morgan v. Campbell, 816 So. 2d 251 (Fla. 2d DCA 2002). Those cases have several differences from the case before us, but one key difference merits comment. In each, the trial court dismissed the case after an evidentiary hearing enabled it to find as facts that the plaintiff had done something false

or misleading, that the plaintiff's nonculpable explanations for his conduct were unconvincing, and that the conduct was of a kind sufficiently severe to warrant dismissal under our cases. See Ramey, 993 So. 2d at 1020; Morgan, 816 So. 2d at 253. Here, "the trial court failed to conduct an evidentiary hearing and thus lacked a sufficient evidentiary basis for determining that fraud on the court had occurred." See Ramey, 993 So. 2d at 1020 (distinguishing cases involving this circumstance).

III.

The limited documentary record before the trial court was not sufficient to justify a decision that dismissal, rather than impeachment at trial or a traditional discovery sanction, was the appropriate remedy for Mr. Duarte's conduct. As such, the trial court abused its discretion in dismissing the action with prejudice. Its final order is reversed, and the case is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

LaROSE and SLEET, JJ., Concur.